IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| RODELL HARRIS, | ) |
| Plaintiff, | ) No. 14 cv 2052 EJM |
| vs. | ) ORDER |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY, | ) |
| Defendant. | ) |

Plaintiff brings this action seeking judicial review of the Commissioner's denial of his application for supplemental security income benefits. Briefing concluded March 2, 2015. The court has jurisdiction pursuant to 42 USC §405(g). Affirmed.

Plaintiff asserts the Administrative Law Judge (ALJ) failed to give proper weight to the opinions of two non-treating, examining medical sources, improperly evaluated plaintiff's subjective complaints, and erred in applying the age category Medical-Vocational guidelines. Accordingly, he asserts that the Commissioner's decision is not supported by substantial evidence on the record as a whole.

[R]eview of the agency decision is limited to whether there is substantial evidence on the record as a whole to support the [Commissioner's] decision. This requires [the court] to do more than merely parse the record for substantial evidence supporting the [Commissioner's] decision. [The court] also must consider evidence in the record that detracts from the weight of the decision. Substantial evidence is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion.

Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992.)

Plaintiff is a 54-year-old man with a high school graduate equivalence degree and past work as a cleaner and inventory specialist. He filed an application for supplemental security income alleging disability due to bipolar disorder, hepatitis C, sinus problems, heart problems, and back, shoulder and arm arthritis. An administrative law judge ("ALJ") considered plaintiff's claim and concluded that his allegations of disabling symptoms were not fully credible. The ALJ determined that plaintiff retained the residual functional capacity to perform a range of unskilled, light work with additional environmental and mental limitations. Relying on vocational expert testimony, the ALJ concluded that plaintiff could perform work that existed in significant numbers in the national economy, including work as a pricer and folder. Thus, the ALJ found plaintiff not disabled.

Plaintiff argues that the ALJ erred in weighing opinions from two non-treating, examining medical sources. The ALJ considered opinions from examining physicians Ralph Scott, Ph.D., and Foram Shah, M.D. (Tr. 17-18, 503-507, 659-665). Plaintiff argues that the ALJ gave both opinions insufficient weight. An ALJ may "justifiably discount" a medical opinion when it is "inconsistent or contrary to the medical evidence as a whole." Martise v. Astrue, 641 F.3d 909, 925 (8th Cir. 2011). Here, the ALJ discussed Dr. Scott's and Dr. Shah's reports and opinions (Tr. 17-18). The ALJ assigned the opinions little weight because the doctors' reports did not support their

opinions, and the opinions were inconsistent with other substantial evidence in the record (Tr. 17-18).

The ALJ weighs a physician's opinion regarding what a plaintiff can do despite his impairments pursuant to the criteria set forth in 20 C.F.R. § 416.927(c). Relevant factors include

1. Whether the expert examined the claimant;

2. Whether and to what extent the expert treated the claimant;

3. Whether the opinion relies upon probative evidence and provides a persuasive rationale;

4. Whether the opinion is consistent with the record as a whole;

5. Whether the expert has a specialization; and

6. Whether any other relevant considerations apply, including the source's familiarity with the Commissioner's standards and the extent to which the source is familiar with the case record.

20 C.F.R. § 416.927(c)(1)-(6). Here, the ALJ properly weighed the medical opinions under the regulatory factors, and properly declined to adopt the opinions.

On June 7, 2010, Dr. Scott conducted a consultative psychological examination (Tr. 503-507). Dr. Scott saw plaintiff only once, and he did not prescribe any treatment. 20 C.F.R. § 416.927(c)(1)-(2). Thus, he was not a treating source. See 20 C.F.R. § 416.902 (definition of treating source). Dr. Scott conducted an examination that revealed little objective findings of impairment and focused heavily on plaintiff's unverified subject complaints (Tr. 503-507). He diagnosed plaintiff with depressive disorder with anxiety and panic

features, polysubstance abuse in possible remission, personality disorder with avoidant and dependent features and a rule-out diagnosis of borderline intellectual functioning (Tr. 506). Dr. Scott opined plaintiff would be unable to succeed in either part-time or full-time competitive employment; would have uneven and marginally fair ability to remember and understand instructions, procedures, and locations; and would have marginally fair to poor ability to carry out instructions and maintain attention, concentration and pace (Tr. 507). In addition, Dr. Scott opined that plaintiff could interact with supervisors but would be unable to interact with co-workers and the general public (Tr. 507).

The ALJ gave Dr. Scott's opinion little weight because it was not supported by the doctor's own findings, was based upon plaintiff's unverified reports, and was inconsistent with other substantial evidence in the record (Tr. 17). When a doctor's own medical report does not support his opinion, the ALJ may discount the opinion. See 20 C.F.R. § 416.927(c)(3); see also Halverson v. Astrue, 600 F.3d 922, 930 (8th Cir. 2010) (holding that the ALJ can discount even a treating physician's opinion that is not supported by the physician's own reports). Here, plaintiff contended that he was barred from driving, yet had driven himself to Dr. Scott's examination and had even arrived early (Tr. 503). He reported a history of low-level jobs, interspersed with incarcerations related to drug use (Tr. 504-505). Although plaintiff was digressive, tangential and impulsive in interview, the things he discussed remained relevant to his own emotional needs (Tr. 503). He complained of depression and perceptual disturbance related to

witnessing a shooting death at a bar, but his affect was bright and suggested only mild mania (Tr. 503-504). His concentration was poor and memory was moderately below age norms, yet the mini-mental status exam indicated only mild cognitive impairment (Tr. 503-506). Dr. Scott noted plaintiff's poor WRAT-3 scores, but, as the ALJ noted, the low scores may be due to his limited education rather than a clinical diagnosis (Tr. 506). Dr. Scott's report does not support his opinion, but rather is more consistent with the ALJ's findings that plaintiff was limited to unskilled, simple work, with few changes, that plaintiff could learn in 30 days or less, and to work with only occasional interaction with the public, co-workers and supervisors (Tr. 14).

Next, the ALJ properly discounted Dr. Scott's opinion because the doctor relied upon plaintiff's subjective complaints (Tr. 17). Kirby, 500 F.3d at 709 (holding that an ALJ may give less weight to a doctor's opinion that was based largely on the claimant's subjective complaints rather than on objective medical evidence). Indeed, Dr. Scott indicated that much of the history had not been verified and was based on plaintiff's own reports (Tr. 507). To the extent that Dr. Scott relied upon plaintiff's reports rather than documented medical signs and laboratory findings, the statement is "not a 'medical opinion' at all – it merely regurgitates [plaintiff's] self-described symptoms." Francis v. Comm'r Soc. Sec. Admin., 414 Fed. App'x 802, 804 (6th Cir. 2011); see Gates v. Astrue, 627 F.3d 1080, 1082 (8th Cir. 2010) (approving similar inference).

5

Lastly, the ALJ noted that Dr. Scott's opinion was inconsistent with other substantial evidence in the record (Tr. 17). See 20 C.F.R. § 416.927(d)(4). Despite allegations of disabling mental impairments, plaintiff received little treatment for any mental impairment. Dr. Scott noted that plaintiff had not received mental health treatment, aside from counseling when incarcerated (Tr. 505). The lack of ongoing counseling or psychiatric treatment is inconsistent with plaintiff's claim for disability. See Roberts v. Apfel, 222 F.3d 466, 469 (8th Cir. 2000).

A previous consultative psychologist, Karl Moe, Ph.D., noted few mental limitations due to mental impairments, although he did opine that plaintiff had physical limitations related to pain (Tr. 426-427). Dr. Moe stated plaintiff could understand and remember instructions and procedures; interact well with others; use good judgment; and make adjustments (Tr. 426-427). Dr. Moe concluded plaintiff could carry out instructions, but may have limitations due to pain (Tr. 427). He opined that plaintiff's pace was slowed by pain and less than optimal concentration (Tr. 426). The ALJ is responsible for resolving conflicts among medical opinions. Finch v. Astrue, 547 F.3d 933, 936 (8th Cir. 2008).

Also inconsistent with Dr. Scott's opinion, plaintiff's daily activities were extensive, with plaintiff admitting to cleaning, laundering, cooking, mowing, yard maintenance, shopping, reading, and watching movies and television (Tr.

6

13, 40-42, 300-303). Plaintiff also reported grilling out, going to the park, and playing with his grandchildren (Tr. 303). In weighing a doctor's opinion, the ALJ may consider inconsistencies between the opinion and the claimant's activities of daily living. See Owen v. Astrue, 551 F.3d 792, 799 (8th Cir. 2008). Accordingly, the ALJ properly concluded that Dr. Scott's opinion was inconsistent with the record as a whole (Tr. 17-18). For these reasons, the ALJ properly gave Dr. Scott's opinion little weight.

Regarding Dr. Shah, on April 23, 2012, Dr. Shah conducted a consultative physical examination (Tr. 5). Dr. Shah saw plaintiff only once, and he did not prescribe any treatment. 20 C.F.R. § 416.927(c)(1)-(2). Thus, he also was a not a treating source. See 20 C.F.R. § 416.902 (definition of treating source). Dr. Shah diagnosed plaintiff with back pain and shortness of breath (Tr. 665). However, Dr. Shah's report documents little objective findings to support physical functional limitations. Indeed, Dr. Shah stated that plaintiff did not have findings on x-rays to justify the degree of physical impairment that plaintiff reported (Tr. 665-666). Plaintiff had normal gait, normal leg muscle strength, and no sensory or reflex loss (Tr. 660, 664). Dr. Shah further noted that plaintiff's COPD was treated only with Flonase and that he continued to smoke (Tr. 665).

Dr. Shah's opinion consists of nonspecific limitations in various areas of functioning. Dr. Shah stated, "He would be able to stand and move about it

7

from difficulty" (Tr. 665). This was an apparent typographical error, as Dr. Shah explained that plaintiff's x-rays did not justify plaintiff's alleged limitations, and plaintiff had no antalgic gait or other gait problem (Tr. 665). As the ALJ noted, reading Dr. Shah's statement as imposing standing and walking limitations causes the opinion to be inconsistent with the doctor's own report (Tr. 18). An opinion that is unsupported by the doctor's own report can be discounted. See Halverson, 600 F.3d at 930.

The ALJ also discounted Dr. Shah's non-specific limitations in lifting, carrying, climbing, kneeling, and crawling (Tr. 18). Dr. Shah did not provide persuasive rationale for the limitations, and only generally concluded that plaintiff would have some difficulty in those areas of functioning. The ALJ can discount opinions that do not address specific functional limitations. See Musial v. Astrue, 347 Fed. App'x 260, 262 (8th Cir. Oct. 6, 2009). The ALJ's rationale for assigning Dr. Shah's opinion minimal weight is supported by the evidence in the record.

Next, plaintiff contends that the ALJ improperly evaluated his subjective complaints. The ALJ considered plaintiff's subjective complaints, but concluded his allegations of disabling symptoms were not credible based on the lack of corroborating objective medical evidence, the effectiveness of treatment in controlling his symptoms and his extensive activities of daily living. The ALJ properly concluded that plaintiff's subjective complaints were not fully credible

8

based upon the lack of objective medical evidence to support the degree of limitations alleged, the effectiveness of treatment in controlling his symptoms, and his extensive activities of daily living (Tr. 27 32). When determining residual functional capacity, the ALJ must evaluate the claimant's credibility regarding his subjective complaints. Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001). In doing so, the ALJ must consider objective medical evidence and any evidence relating to a claimant's daily activities; duration, frequency and intensity of pain; precipitating and aggravating factors; dosage, effectiveness and side effects of medication; and functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ does not have to discuss each Polaski factor as long as the ALJ recognizes and considers the Polaski analytical framework, as he did here (Tr. 14-15). Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004). Credibility of a claimant's subjective testimony is primarily for the ALJ, not the reviewing court, to decide. Pearsall, 274 F.3d at 1218.

The ALJ concluded that the objective medical evidence did not support plaintiff's allegations of disabling symptoms (Tr. 16-18). Plaintiff's radiographic tests have consistently shown only degenerative changes. A September 30, 2009 cervical magnetic resonance imaging scan ("MRI") revealed mild disc disease at C5-6 and C6-7 (Tr. 499). On June 8, 2010, x-rays showed normal left and right knees and minimal lumbar degenerative disc disease (Tr. 526-528). Finally, an April 23, 2012 lumbar x-ray showed narrowing of the L4-5 disc space

and mild degenerative changes at several levels (Tr. 666). Degenerative disc changes generally do not support a finding of disability. See Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993) (degenerative disc disease with mild posterior bulging was not a disabling condition). Consistent with these mild degenerative findings, plaintiff has generally demonstrated normal to mildly decreased range of motion (Tr. 458, 626, 647, 660). His gait and station are normal (Tr. 626, 647, 665). In addition, plaintiff's deep tendon reflexes are normal, his motor and sensory systems are intact, and he has 5/5 leg muscle strength (Tr. 660, 664). These objective findings are inconsistent with plaintiff's complaints of disabling pain. See e.g. Locher v. Sullivan, 968 F.2d 725, 728 (8th Cir. 1992); Guilliams v. Barnhart, 393 F.3d 798, 802 (8th Cir. 2005).

Plaintiff's treatment records also establish that he does not have disabling COPD or cardiac impairment. Regarding plaintiff's COPD, a June 8, 2010 spirometry was normal, with forced vital capacity ("FVC") actually better than predicted (Tr. 529). In fact, despite plaintiff's forty-year history of smoking one pack of cigarettes a day, his lung age was forty-six years old, compared to his chronological age of fifty-two (Tr. 529).

Regarding cardiac impairment, an October 15, 2010 resting and stress cardiac perfusion test indicated only a small reversible inferior wall defect, with no focal wall motion abnormality (Tr. 576). Plaintiff's left ventricle ejection fraction was 73% (Tr. 576). The stress test was stopped when protocol was fulfilled, and

plaintiff showed no symptoms and had negative electrocardiogram ("ECG") findings (Tr. 590).

The ALJ also considered the effectiveness of plaintiff's medications in controlling his symptoms. Impairments that can be controlled by treatment or medication are not disabling. See Brown v. Astrue, 611 F.3d 941, 955 (8th Cir. 2010). The ALJ noted that plaintiff's back pain was relieved by hydrocodone and acetaminophen (Tr. 15, 17, 625). Plaintiff's chest pain responded well to nitroglycerin, and he testified that he had not required use of nitroglycerin for the last four months (Tr. 15, 42). His COPD was relieved with use of an inhaler (Tr. 15, 44-45). In addition, plaintiff took Neurontin for arm tingling and pain (Tr. 17, 606). The evidence supports a conclusion that plaintiff's impairments were controlled on medication. Plaintiff's stabilization on medication supports the ALJ's conclusion that his impairments were not disabling. *Id.*

Finally, the ALJ noted that plaintiff engaged in extensive activities of daily living. In September 2009 and June 2010, plaintiff reported that he could walk sixteen blocks (Tr. 506, 513). On his Disability Report, plaintiff stated that he could perform his own personal care, cook meals, clean house, wash clothes, wash dishes, shop, attend school functions, and grill out (Tr. 300-303). He reported that he went to the park and that he played with his grandchildren (Tr. 303). At his hearing, plaintiff testified that his daily activities included walking, looking for jobs, watching television, reading books, washing clothes, mowing the yard, and working in the yard (Tr. 40-41). These activities support a conclusion

that plaintiff's pain complaints were not disabling. See McDade v. Astrue, 720 F.3d 994, 998 (8th Cir. 2013).

Finally, although plaintiff argues at step five that the ALJ erred in applying the age categories mechanically in a borderline age situation, the ALJ properly declined to apply a borderline age situation when plaintiff was five months and twelve days from reaching the next age category. The ALJ properly relied upon the vocational expert's testimony to conclude that plaintiff was not disabled because there were jobs existing in significant numbers that he could perform.

At step five of the sequential evaluation process, the ALJ relied upon the framework of the Medical-Vocational Guidelines ("Grid Rules") and a vocational expert's testimony to conclude that plaintiff was not disabled (Tr. 19-20, 63-64). Plaintiff argues that the ALJ should have considered him to be in a borderline age that would warrant relying on an older-age category Grid Rule to find him disabled. (Pl.'s Br. at 19-21.) The ALJ properly declined to apply a borderline age for an individual who was five months and twelve days from the next age category and had no significant vocational adversities that would warrant treating him as older than his chronological age.

The Grid Rules are a matrix system for handling claims that involve substantially uniform levels of impairment. See 20 C.F.R. Part 404, Subpt. P, App. 2. These rules indicate a finding of disabled or not disabled for various combinations of age, education and work experience. The Grid Rules provide a uniform conclusion about the availability of jobs for all persons whose medical

condition is categorized in the same way. See, id. They take administrative notice of the existence of jobs in the national economy that the claimant is able to perform. See Heckler v. Campbell, 461 U.S. 458, 467-68 (1983).

There are three general age categories for purposes of applying the grids: a "younger person," defined as an individual under fifty years old; a person "closely approaching advanced age," defined as an individual aged fifty to fifty-four; and a person of "advanced age," defined as age fifty-five and older. 20 C.F.R. § 416.963(c)-(e). Here, in addition to relying on the vocational expert's testimony, the ALJ identified Grid Rule 202.13 as a framework for finding plaintiff not disabled (Tr. 19). Grid Rule 202.13 applies to persons closely approaching advanced age who can perform the full range of light work and has unskilled past relevant work and at least a high school education. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 202.13. Accordingly, the ALJ properly relied upon the framework of the Grid Rules and a vocational expert's testimony to find that plaintiff was not under a "disability" as defined in the Act, from April 28, 2010 through June 11, 2012 (Tr. 19-20).

Grid Rule 202.13 plainly applies to individuals such as plaintiff who were under the age of fifty-five at the time of the decision. See 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 202.13. It is undisputed that plaintiff was younger than fifty-five years old as of June 11, 2012, the date the ALJ issued his decision.

Specifically, plaintiff was five months and twelve days from his fifty-fifth birthday on the date of the ALJ's decision. See Pl.'s Br. at 19. Nevertheless, plaintiff asserts his case constitutes a "borderline situation" under the regulations, which provide that the Commissioner:

> will not apply the [Grid Rule] age categories mechanically in a borderline situation. If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case.

20 C.F.R. § 416.963(b). The terms "borderline" and "a few months" are not specifically defined by statute or regulation.

Although plaintiff argues that a claimant within six months of an older age category presents a borderline situation (Pl.'s Br. at 19-20), the Eighth Circuit Court of Appeals did not adopt a six-month, bright line test. See Phillips v. Astrue, 671 F.3d 699, 703 (8th Cir. 2012). The court in Phillips concluded that the ALJ should have considered in the decision whether to apply a higher age category for a claimant who was four months from the higher age category and had an additional vocational adversity. Id. The court did not, however, mandate that the ALJ actually apply the higher age category. Id. Here, the ALJ could reasonably conclude that a borderline situation did not exist because plaintiff was over five months away from the higher, advanced age category. Further, plaintiff does not have any additional vocational adversity, as he has a high school education and unskilled past relevant work, the highest vocational factors

14

contemplated under Grid Rule 202.13. Because the ALJ did not believe a borderline situation existed, the ALJ did not have to conduct a borderline age analysis.

Based on the record, it is the court's view that the Commissioner's decision is supported by substantial evidence.

It is therefore

ORDERED

Affirmed.

March 23, 2015

*[signature]*
Edward J. McManus, Judge
UNITED STATES DISTRICT COURT